### TOM WELLS v. THE STATE.

#### No. 1302. Decided November 15, 1911.

**1.—Murder—Race Discrimination—Bill of Exceptions.**

Where, upon appeal, the record did not contain the bill of exceptions on the question of race discrimination, the same could not be considered.

**2.—Same—Charge of Court—Manslaughter.**

Where, upon trial of murder, the defendant was convicted of manslaughter, he could not complain of the court's charge on murder in the first and second degree.

**3.—Same—Charge of Court—Self-Defense—Deadly Weapon.**

Where, upon trial of murder, the court, in his charge on self-defense, submitted an instruction more favorable to the defendant than the law required, on the presumption of a deadly weapon, he could not complain.

**4.—Same—Charge of Court—Habitation—Force.**

Where, upon trial of murder, the court submitted a charge on the question of force required to be used by the defendant in ejecting deceased from an entrance to defendant's house, in almost the very language of the statute, and applicable to the facts in evidence, there was no reversible error.

**5.—Same—Rule Stated.**

The statute provides that in order to justify a killing in the defense of habitation, every effort in defendant's power must have been made to repel ingression before he would be justified in killing, and the court must charge the law applicable to the case.

**6.—Same—Case Stated—Charge of Court—Ejection.**

Where the evidence suggested strongly that the defendant shot deceased simply because he was in defendant's house, and that he made no effort to get him out except telling him to leave, the court correctly charged that the defendant must use all reasonable and necessary force in ejecting deceased, before he was justified in killing him, and refusing a requested charge which did not apply the statute.

Appeal from the District Court of Potter. Tried below before the Hon. J. N. Browning.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Cooper, Merrill & Lumpkin,* for defendant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was under an indictment charging murder convicted of manslaughter, and given two years confinement in the penitiary.

1. Motion to quash the indictment was based on averments that appellant was a negro, and there had been discrimination in Potter County against the negro race in selecting jurors. This was controverted by the State. The judgment recites that after hearing the evidence the motion was overruled. The record does not contain a bill of exceptions on this, or any other matter, and the evidence introduced, if any was in regard to the allegations of the motion, is not preserved in the record. We are, therefore, unable to review that question.

2. The motion for new trial attacks the court's charge, or that portion of the court's charge which submits murder in the first and second degree. A sufficient answer to these criticisms is found in the fact that appellant was acquitted of murder in both degrees and given the minimum punishment for manslaughter.

3. On the question of self-defense the court charged the jury,

among other things, thus: "If from the evidence you believe the defendant killed. the said James Reed, but further believe that at the time of so doing the deceased had made an attack or was about to make an attack on him which, from the manner and character 'of it and the relative strength of the parties and the defendant's knowledge of the character and disposition of the deceased, caused him to have a reasonable expectation or fear of death or serious bodily injury, and that acting under such reasonable expectation or fear viewed from defendant's standpoint, the defendant killed the deceased, then you should acquit him; and if the deceased was armed at the time he was killed and was making such attack or apparent attack on defendant, and if the weapon used or about to be used by him and the manner of its use were such as were reasonably calculated to produce death or serious bodily injury, viewed from defendant's standpoint then the law presumes the deceased intended to murder or aimed to inflict serious bodily injury upon the defendant."

That portion of this charge which submits the presumption from the use or threatened use of the weapon is attacked, in that it places a greater burden upon the defendant than the law places, and required the jury to believe the deceased was armed before the presumption of law would obtain in his favor that deceased intended to inflict death or serious bodily injury. Appellant testified that he believed deceased was armed; that deceased was attempting to enter his house at the time he was shot and was reaching through a door as if to unlatch it to come in; that he knew deceased had something in his pocket; that he had his hand in his pocket, and under these conditions he shot him.

This charge perhaps was hardly called for by the facts, but appellant, we think, is not in any condition to complain. Deceased was not using a pistol or any deadly weapon, at least there was none in sight. He was making a threatening gesture which if appellant believed from his standpoint under those circumstances he would be entitled to a charge on the law of self-defense, but it may be questioned that he was entitled to the charge requiring the jury to presume that he intended to kill by the use of a deadly weapon. The court properly submitted the law of apparent danger. Of this appellant makes no complaint. Therefore, we are of opinion that the charge in regard to the presumption of the use of a deadly weapon or threatened use of it, was favorable to defendant and authorized the jury to believe that if deceased was about to use a deadly weapon, although he had not exhibited any, still they would presume that deceased intended to kill appellant. Under this view of the matter, we are of opinion that the charge was more favorable to appellant than the law justified, and of this he ought not to be heard to complain. If appellant believed deceased was about to use a deadly weapon on him, viewed from his standpoint, as charged by the court, then the jury were instructed they must presume that he intended to

kill appellant or to inflict upon him serious bodily injury. This is carrying the doctrine a long ways and very favorable to the accused.

4. The defense of habitation is criticised. The charge is as follows: "The defendant had the right under the law to control his home, whether it was a public boarding-house or private residence, and to exclude anyone the right to enter therein except with his consent. Now, if you believe from the evidence that the deceased, at the time of receiving the fatal shot, was attempting to enter the home of the defendant against his consent and after being warned by defendant to stay out, then the defendant would be justified in using all reasonable and necessary force to repel and prevent the deceased's entrance. But he would not be authorized to take his life to prevent such unlawful entrance without exhausting all other reasonable means to stop the deceased before resorting to the act of killing him."

In this connection appellant asked the following instruction, which was refused: "You are instructed at the request of the defendant as the law of this case that the defendant, Tom Wells, as the proprietor of a house, either as a private boarding-house, public boarding-house or private residence, had the right in law to prohibit any person or persons from entering therein, and that if the deceased in this case was claiming or exercising any right of entry therein and you so find and believe from the evidence in the case and was attempting to enter therein at the time of the alleged injury, then that the defendant was justified in repelling such entrance and should be acquitted by your verdict."

That portion of the charge that is criticised is in the following language: "But he would not be authorized to take his life to prevent such unlawful entrance without exhausting all other reasonable means to stop the deceased before resorting to the act of killing him." We suppose that the special charge asked was to cover and correct what appellant thought was erroneous in the main charge. The objection to the charge was, that it was on the weight of the evidence and not the law of the case in this: The testimony of the eyewitnesses was that the deceased was advancing upon the defendant, threatening to make an entrance into defendant's home, was in from four to six feet of the defendant, had his hands upon the door, trying to force a screen door open that intervened between defendant and deceased; that defendant was armed, and before deceased had arrived at the door had warned him not to enter the building; had told him that in the event he did enter that he would shoot him dead, yet the deceased was continuing to advance upon the defendant, and there was no evidence in the record from any source that any other means, reasonable or otherwise, could have been used by the defendant to prevent such entrance. That this charge was further not the law of the case, for the reason that the defendant had the right to repel such an attack, and to use all necessary and reasonable

force to prevent such entrance to his home, even the taking of human life, and it was wholly within the province of the jury to determine whether the kind and character of force used was reasonable and necessary. The charge given by the court is almost in the very language of the statute itself, and, therefore, it was not error to give it. The statute provides that in order to justify a killing in the defense of habitation, every other effort in his power must have been made by the possessor to repel ingression before he would be justified in killing. There was no effort on the part of appellant to put deceased from the house. They were some feet apart; the distance is made uncertain by the varying testimony of the witnesses, the defendant's evidence putting him at the door, the State witnesses putting him back from the door. Appellant was in the room and deceased upon a gallery. The law requires before killing the possessor of the house must use every other reasonable effort in his power to repel the intrusion in order to be justified in taking human life. Where a party is an intruder or trespasses upon the habitation of another, or being his guest, puts himself wrong by his conduct in the house, the owner has a right to put him out, provided he uses no more force or greater or more dangerous means than was necessary to effect the expulsion of the party. Turner v. State, 16 Texas Crim. App., 378; Stanley v. State, 16 Texas Crim. App., 392; Hinton v. State, 24 Texas, 454. Reasonable force must be used. McCray v. State, 38 Texas Crim. Rep., 609. And it was held in Sargent v. State, 35 Texas Crim. Rep., 325, that on a trial for murder, where the evidence presented the issue of an unlawful intrusion into the home, the defendant would have no right to complain of a charge which authorized him to slay deceased for such intrusion after he had resorted to all other means except retreating to get rid of him. It is unnecessary to undertake to discuss what may be reasonable force, or as the statute states, every other effort except killing, in this connection. Wherever the question is raised of the defense of the habitation of a home, the court must charge the law applicable to the case. The evidence in this case suggests strongly that appellant shot simply because deceased was in the house, and because of his being outraged by the fact that he was there, and that he made no effort to get him out except telling him to leave. Just how far the evidence would have to go to excuse a party from using all efforts to eject the intruder before killing, would be difficult to state, because each case must depend upon the peculiar facts surrounding the homicide. But the statute is broad enough and clear enough to show that every other effort must be resorted to except slaying the deceased before the possessor of the house would be justified in killing. The charge asked by appellant is not correct. It omitted entirely that portion of the statute above quoted, which requires the appellant to use every effort to put the deceased out before killing him, but authorized the jury that the mere fact of

his being an intruder would justify the killing. This is not the law under our statute.

We are of opinion that the questions suggested for revision are not of sufficient gravity to require a reversal of the judgment, therefore it is affirmed.

*Affirmed.*